SMOTHERS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-056-CR

GENE LYNN SMOTHERS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

Gene Lynn Smothers appeals from his conviction for driving while intoxicated and his sentence of two years’ probation.  In two points, he complains that the trial court erred by admitting evidence of the horizontal gaze nystagmus test and by admitting evidence of retrograde extrapolation
 in violation of 
Mata v. State
, 46 S.W.3d 902 (Tex. Crim. App. 2001).  We affirm.

Facts

Around noon on October 24, 2001, appellant rear-ended Sarah Mills’s vehicle.  Police arrived at the scene to investigate the accident and to perform sobriety tests.  According to the officer, appellant failed the horizontal gaze nystagmus test (HGN), the one-leg stand test, and the walk and turn test.  Police discovered a glass tumbler in appellant’s car full of brown liquid that smelled of alcohol.  At the scene, the police videotaped the sobriety tests and the trial court admitted the tape at trial.

After the police arrested appellant, they transported him to the police station where he took two breath tests.  The breath test results were 0.129 at 2:19 p.m. and 0.123 at 2:22 p.m.  The accident occurred at 12:43 p.m. and the police administered the intoxilyzer results approximately one hour and forty-five minutes after the accident.  The trial court admitted the breath test results at trial. 

Michelle O’Neal, the State’s intoxilyzer expert, testified that it was her expert opinion that appellant was legally intoxicated when he drove.  Apparently, she made a calculation error at one point during her testimony, which forms the basis of one of appellant’s complaints on appeal. 

Horizontal Gaze Nystagmus Test Evidence

In his first point, appellant complains that the trial court erred by admitting evidence of the HGN test
(footnote: 1) because Officer Edward Lynn, who administered the test, admitted that he failed to follow the National Highway Traffic Safety Administration (NHTSA) standards.  At trial, Officer Lynn admitted that he did not administer the HGN test by the book, but based upon his personal observations the results were consistent with his determination that appellant was intoxicated. 

We review a trial court's ruling to admit or exclude evidence under an abuse of discretion standard.  
Rankin v. State
, 974 S.W.2d 707, 718 ( Tex. Crim. App. 1998) (op. on reh'g); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).  If the court's decision falls outside the “zone of reasonable disagreement,” it has abused its discretion.  
Rankin
, 974 S.W.2d at 718; 
Montgomery
, 810 S.W.2d at 391.

The Texas Court of Criminal Appeals 
first discussed the HGN test and approved it for admission into evidence in 
Emerson v. State
, 880 S.W.2d 759, 768 (Tex. Crim. App. 1994)
.
  In that case, the court concluded that the theory underlying the HGN test and the technique employed in administering it were both sufficiently reliable to allow the test to be admissible under evidence rule 702.  
Id.; see also 
Tex. R. Evid.
 702.
  In each individual case, however, the State still must show by expert testimony that the test was properly administered.  
See id.
 at 769.  Accordingly, the results from the administration of the HGN test may be admitted at trial under the following circumstances: (1) the testifying officer qualifies as an expert witness regarding the test's administration and technique; (2) the officer administers the test properly; and (3) the results are not inadmissible for some other reason.  
Ellis v. State
, 86 S.W.3d 759, 760 (Tex. App.—Waco 2002, pet. ref’d) (citing 
Emerson
, 880 S.W.2d at 763, 769).

Appellant argues that the HGN results should not have been admitted by the trial court because Officer Lynn failed to complete the minimum number of fourteen passes across appellant’s eyes, as required by NHTSA.  The State contends that the testimony was properly admitted because slight deviation from the guidelines in administering the test goes to the credibility of the test, not its admissibility.
(footnote: 2)  Alternatively, the State argues that any error in admitting evidence on the results of the HGN test was harmless.

Officer Lynn testified that he was called to the scene of appellant’s accident on October 24, 2001 to administer sobriety tests.  The original responding officer, Officer Lee Rice, needed Officer Lynn’s assistance because Officer Rice was driving a motorcycle that could not transport a suspect and had no camera on board. 

Pre-trial, Officer Lynn testified that HGN test results would be invalid if the test administrator failed to administer the test in compliance with the NHTSA standards.  He stated that he was not sure if he administered appellant’s test in compliance with those standards.  Appellant objected to Officer Lynn’s HGN testimony because he admitted he did not follow protocol when administering the HGN test on appellant because he failed to make the minimum number of passes across appellant’s eyes.  The trial court overruled appellant’s objection and stated that the jury would be allowed to hear the results and weigh the evidence in light of the fact that the test may not have been administered properly. 

During trial, Officer Lynn testified that he was certified to administer the HGN test.
(footnote: 3)  When Officer Lynn was dispatched to the scene of appellant’s car accident, he asked appellant whether he had any injuries or impairments that might prevent him from completing the sobriety tests.  Appellant told Officer Lynn that he had one leg that was shorter than the other and wore glasses, but otherwise had nothing wrong with him.  Officer Lynn then described for the jury the scientific methodology used in the administration of the test and that appellant exhibited enough clues to indicate that he was impaired.

However, on cross-examination, Officer Lynn admitted that in administering the HGN test on appellant he failed to complete the minimum number of fourteen passes across appellant’s eyes, as required by NHTSA.   Additionally, Officer Lynn admitted that if the administrator of the test failed to complete the minimum amount of passes over the subject’s eyes, it could invalidate the test results. 

Based upon Officer’s Lynn’s admission that he did not administer the test properly, it is clear that the HGN test results did not meet the second prong of the 
Emerson 
requirements for admissibility.  
Emerson
, 880 S.W.2d at 763, 769.  Accordingly, we hold that the trial court abused its discretion by admitting Officer Lynn’s testimony regarding the HGN test results.  

Because we hold that the trial court abused its discretion in admitting evidence of the HGN test results, we must determine whether appellant was harmed by the error. 
 See
 
Tex. R. App. P
. 44.2.  
The State contends that if the trial court erred in admitting the results, any error was harmless.
  Error under the rules of evidence in the admission of evidence constitutes nonconstitutional error.  
See 
Tex. R. App. P
. 44.2(b)
; Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  A reviewing court is to disregard a nonconstitutional error that does not affect the substantial rights of the defendant.  
Tex. R. App. P
. 44.2(b).  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

If the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in determining the jury's verdict. 
 
O'Neal v. McAninch
, 513 U.S. 432, 435, 115 S. Ct. 992, 994 (1995); 
Webb v. State
, 36 S.W.3d 164, 182-83 (Tex. App.—Houston [14
th
 Dist.] 2000, pet. ref'd).  The defendant is not required to prove harm from an error.  
Johnson v. State
, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001).  It is the duty of the reviewing court to assess harm from the context of the error.  
Id.
 

Thus, the proper inquiry is whether the trial court's error in allowing Officer Lynn to testify on the HGN test results substantially swayed or influenced the jury's verdict.  
See Kotteakos
, 328 U.S. at 765, 66 S. Ct. at 1248; 
Johnson
, 43 S.W.3d at 4.  In making this determination, we consider the trial court's erroneous admission of the HGN testimony in the context of the entire record and not just whether there was sufficient or overwhelming evidence of the defendant's guilt.  
Motilla v. State
, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002).

Although appellant denied having anything to drink, at the police station he eventually told Officer Rice that he drank two vodka and diet cokes.  Appellant also admitted to taking Hydrocodone the day of the accident.  Officer Rice noticed that appellant was unsteady on his feet and had to lean against the car to support himself.  At the police station, Officer Rice administered additional sobriety tests on appellant.  He failed the one leg stand and walk and turn tests at the station.  Officer Rice also administered two breath tests on appellant, which showed that appellant’s blood alcohol level was 0.129 and 0.123 an hour and a half after the accident.  Both are above the legal limit of .08.  
See 
Tex. Penal Code Ann.
 § 49.01(2)(B) (Vernon 2003).

Officer Lynn testified that, in addition to the HGN test in the field, appellant also failed the one leg stand test and the walk and turn test.  Additionally, when Officer Lynn looked in appellant’s car he found a glass full of brown liquid that smelled of alcohol.  The trial court also admitted the patrol car videotape of the sobriety tests at trial. 

We conclude that, in the context of all the evidence against appellant, the trial court’s error in admitting the HGN testimony did not affect appellant’s substantial rights
 and did not have a 
substantial or injurious effect on the jury’s verdict.  The HGN test was only one test out of the three performed in the field, and the four performed at the station, which he all failed.  
See King
, 953 S.W.2d at 271; 
see also Ellis
, 86 S.W.3d at 761-62; 
Franco v. State
, 82 S.W.3d 425, 428 (Tex. App.—Austin 2002, pet. ref’d).  Thus, we disregard the error.  
See 
Tex. R. App. P. 44.2(
b).  Appellant’s first point is overruled.

Retrograde Extrapolation Evidence

In his second point, appellant complains that the trial court erred by admitting evidence of retrograde extrapolation
 in violation of 
Mata
 because the record is insufficient to support admission of such evidence.  46 S.W.3d at 916.

Retrograde extrapolation is the computation back in time of the blood-alcohol level that estimates the blood-alcohol level at the time of driving based on a test result from some later time.  
Id.
 at 908-09.  The science of retrograde extrapolation can be reliable in a given case depending upon the circumstances.  
Id.
 at 916.  One of the paramount considerations in determining the reliability of retrograde extrapolation, as used in driving while intoxicated cases to estimate a defendant's blood alcohol content (BAC) at time of offense, is the expert's ability to apply the science and explain it with clarity to the court.  
Id.
  Additionally, the expert must demonstrate some understanding of difficulties associated with retrograde extrapolation, awareness of the subtleties of the science, the risks inherent in any extrapolation, and be able to clearly and consistently apply the science.  
Id.
; 
see also
 
Tex. R. Evid.
 702.

Michelle O’Neal testified about appellant’s intoxilyzer test results and retrograde extrapolation both on voir dire and before the jury.  O’Neal is a forensic chemist with the Tarrant County Medical Examiner’s Office and testified in her capacity as the technical supervisor over intoxilyzers in Fort Worth. 

Pre-Trial

Outside the jury’s presence, O’Neal established her qualifications as an expert and laid the scientific predicate for the admissibility of appellant’s breath test results.  At that time, O’Neal erroneously extrapolated that a person with a breath test result of 0.123 at 2:19 p.m., who last ate at 8:30 a.m., would have a BAC of 0.23 at 12:45 p.m. the same day.  O’Neal used a general elimination rate of 0.015 grams of alcohol per hour when doing her extrapolation, but conceded that individual elimination rates vary due to a variety of factors.  
See Mata
, 46 S.W.3d at 916.  Moreover, O’Neal admitted that she was without knowledge of whether appellant had some of the characteristics detailed in 
Mata
.  
Id.

Appellant objected to the admission of O’Neal’s extrapolation evidence based upon the fact that O’Neal failed to meet the requirements of 
Mata 
because she failed to consider many of the
 Mata 
factors in her extrapolation.  
Id.  
The trial court denied appellant’s motion and allowed O’Neal to testify in front of the jury regarding retrograde extrapolation. 

Trial

Once in front of the jury, O’Neal testified to her background and qualifications as an expert witness.  She testified that the accident occurred at 12:43 p.m., the same day that appellant’s alcohol concentration was tested at 0.129 at 2:19 p.m. and 0.123 at 2:22 p.m.  It was her opinion that a person who had an alcohol concentration of 0.123 at 2:22p.m. would have lost the normal use of his or her mental faculties due to intoxication at 12:45 p.m.  O’Neal testified in her extrapolation that she would first add the general elimination rate of 0.015 to the test result of 0.123.  Next, she stated “I’m going to divide this elimination rate [0.015] in half, and that’s going to be 0.075.”  All three numbers (0.015, 0.123, and 0.075) should then be added together in order to obtain appellant’s BAC at the time of the accident.  O’Neal erroneously stated that half of 0.015 would be 0.075, rather than the correct number 0.0075, which resulted in an incorrect, higher number.
(footnote: 4)  Although O’Neal testified incorrectly about the numbers used in her calculations, she never testified to the actual result of the retrograde extrapolation in front of the jury.
(footnote: 5) 

Math Error

Appellant argues that the math error caused O’Neal’s extrapolation to be  in excess of 0.20 instead of 0.1455 (0.123+0.015+0.0075).  Appellant contends that O’Neal’s math error and her failure to consider many of the other 
Mata
 factors demonstrated that she did not clearly and consistently apply the science as required by the court of criminal appeals
.
  However, our review of the record reveals that the erroneous calculation of the retrograde extrapolation was before the trial court during voir dire, but not admitted before the jury.  Moreover, appellant did not object to O’Neal’s math error at trial.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2).  
Preservation of error is a systemic requirement that this court should review on its own motion. 
Martinez v. State
, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); 
Hughes v. State
, 878 S.W.2d 142, 151 (Tex. Crim. App. 1993) (op. on reh’g), 
cert. denied
, 511 U.S. 1152 (1994).
 Appellant failed to object to O’Neal’s testimony on the basis that she made an erroneous calculation. Accordingly, appellant did not preserve error regarding the math calculations.  This portion of appellant’s second point is overruled.

Mata Factors of Reliability

With regard to the 
Mata 
factors of reliability, the court evaluating the reliability of a retrograde extrapolation should consider (a) the length of time between the offense and the tests administered; (b) the number of tests given and the length of time between each; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation.  
Mata
, 46 S.W.3d at 916.  Some of these characteristics include, but are not limited to, the person's weight, gender, typical drinking pattern, tolerance for alcohol, amount of alcohol consumed, what the person ingested, the duration of the drinking spree, the time of the last drink, and how much and what the person had to eat either before, during, or after the drinking.  
Id.
  The 
Mata
 court gave the following guidelines when balancing the factors:

If the State had more than one test, each test a reasonable length of time apart, and the first test were conducted within a reasonable time from the time of the offense, then an expert could potentially create a reliable estimate of the defendant's BAC with limited knowledge of personal characteristics and behaviors.  In contrast, a single test conducted some time after the offense could result in a reliable extrapolation only if the expert had knowledge of many personal characteristics and behaviors of the defendant.  Somewhere in the middle might fall a case in which there was a single test a reasonable length of time from the driving, and two or three personal characteristics of the defendant were known to the expert.  

Id. 
at 916-17.

Here, the intoxilyzer tests took place approximately one hour and thirty-five minutes after the accident.  The tests themselves occurred only a few minutes apart, one at 2:19 and one at 2:22.  Both in voir dire and in front of the jury, O’Neal testified that she considered the following factors when calculating appellant’s BAC: (1) appellant last ate at 8:30 a.m.; (2) appellant last drank at approximately 10:00 a.m.; (3) appellant admitted to drinking two vodka and diet cokes; (4) appellant was last seen driving at 12:43 p.m.; and (5) intoxilyzer results occurred at 2:19 p.m. and 2:22 p.m.  Because the intoxilyzer tests were given within minutes of each other, the circumstances of the present case are most like a situation where a single intoxilyzer test has been given.  The tests were given within a reasonable amount of time after the driving and more than three of appellant’s personal characteristics were known by the expert.  

Appellant argues that the results are not reliable because O’Neal did not consider appellant’s weight, drinking pattern, the exact amount of food in his stomach, the precise number of drinks appellant consumed (aside from the two drinks he admitted to drinking), and exactly when he began and when he stopped drinking.  However, many of the more specific characteristics were unnecessary because O’Neal used the accepted average rate for elimination of alcohol at 0.015 grams per hour, instead of calculating a specific elimination rate for appellant.  We hold that under the circumstances O’Neal considered enough characteristics that her testimony was sufficiently reliable. 

Moreover, 
we note that O’Neal’s retrograde extrapolation testimony was not required in order to admit the intoxilyzer test results in this case because other evidence proved beyond a reasonable doubt that the accused was intoxicated when the offense occurred.
(footnote: 6) 
 See Forte v. State
, 707 S.W.2d 89, 94-95 (Tex. Crim. App. 1986) (holding that defendant committed DWI offense without consideration of extrapolation evidence); 
Price v. State
, 59 S.W.3d 297, 300 (Tex. App.—Fort Worth 2001, pet. ref’d) (holding that extrapolation is not required if other evidence proves intoxication beyond a reasonable doubt); 
O'Neal v. State
, 999 S.W.2d 826, 832 (Tex. App.—Tyler 1999, no pet.) (determining that extrapolation not required to find defendant guilty of intoxication per se).  Accordingly, we hold that the trial court did not err by admitting O’Neal’s testimony.  Appellant’s second point is overruled.

Conclusion

Having overruled both of appellant’s points, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  July 15, 2004

FOOTNOTES
1:
When administering the HGN test, a law enforcement officer is trained to look for three “clues” in each eye.  Nystagmus is an involuntary, rapid, rhythmic movement of the eyeball that is exaggerated through the use of alcohol and certain other drugs; identification of four out of six clues serves as a reliable indicator of intoxication and can be used by the officer in determining whether to make an arrest.  
Compton v. State
, 120 S.W.3d 375, 377 (Tex. App.—Texarkana 2003, pet. ref’d).

2:
The State erroneously cites to 
Compton v. State
, 120 S.W.3d 375, 377 (Tex. App.—Texarkana 2003, pet. ref’d) as a Texas Court of Criminal Appeals case in support of this proposition.

3:
Appellant comments in his brief that the only evidence in support of Officer Lynn’s certification was his own testimony.  Regardless, appellant does not challenge the admission of Officer Lynn’s HGN testimony on this ground.

4:
We note that in voir dire O’Neal extrapolated appellant’s BAC to be 0.23. O’Neal never stated her result aloud in front of the jury, but if we add the general elimination rate to the intoxilyzer result 
(0.015 + 0.123), then add the erroneous number (0.075)
, the result is
 
.213.  If we substitute the correct number for the erroneous one 
(0.015 + 0.123+.0075)
, the result is 0.145.  Both the correct and erroneous results are above the legal limit of .08.  
See 
Tex. Penal Code Ann.
 § 49.01(2)(B).

5:
While in front of the jury, O’Neal may have used a board or chart to calculate the erroneous BAC in front of the jury.  However, it is not clear from the record exactly what was before the jury.  Moreover, the board is not a part of the appellate record and we may not consider it.  
See
 
Wawrykow v. State
, 866 S.W.2d 87, 90 (Tex. App.—Beaumont 1993, pet. ref’d).

6:
See harmless error discussion infra.