Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-10-00307-CR

Gary Lynn **PATTON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 5, Bexar County, Texas
Trial Court No. 249367
The Honorable Linda F. Penn, Judge Presiding

Opinion by:      Marialyn Barnard, Justice

Sitting:         Sandee Bryan Marion, Justice
                 Rebecca Simmons, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:  February 16, 2011

AFFIRMED

After the trial court denied his motion to suppress, appellant Gary Lynn Patton pled no

contest to the offense of driving while intoxicated ("DWI"). Appellant was sentenced to three

days confinement in the Bexar County Jail and ordered to pay a $300 fine. On appeal, appellant

first contends the trial court erred in denying his motion to suppress because (1) the officer

administering the horizontal gaze nystagmus test ("HGN test") was not qualified to do so under

the Texas Administrative Code, and (2) the HGN test was improperly administered by the officer

because the results were "medically impossible." Appellant also contends the trial court erred in denying his motion to suppress the open containers of alcohol found in his vehicle because they were the fruits of an unlawful, warrantless search of his vehicle. We affirm the trial court's judgment.

## BACKGROUND

San Antonio Police Officer Thomas Patten testified at the suppression hearing that he pulled appellant over because appellant was speeding, he failed to signal a lane change, he was weaving in and out of his lane, and he was straddling the lane markings. When appellant rolled his window down to speak with Officer Patten, Officer Patten noticed the vehicle smelled like intoxicants, appellant's eyes were watery and bloodshot, and there was a red cooler on the front passenger side floorboard. Appellant told Officer Patten he drank one beer. Officer Patten directed appellant to get out of the vehicle to inquire about appellant's reckless driving and possible DWI. Officer Patten then had appellant perform field sobriety tests to determine if appellant was intoxicated.

At the suppression hearing, Officer Patten testified about the various field sobriety tests he performed on appellant. Officer Patten said appellant was unable to follow directions during the administration of the HGN test, which lead to difficulty performing the test properly. Officer Patten explained appellant would look at the stimulus, look away, and then look back at the stimulus. Appellant also had a hard time keeping his arms by his sides.

Officer Patten testified that if the subject exhibits two out of eight clues on the walk and turn test, then the subject automatically fails the test and moves on to the next test; appellant exhibited six out of eight clues. Officer Patten then explained two out of four clues on the one leg stand test indicates intoxication but if the subject puts his foot down three or more times, it is

automatically four clues. Here, appellant exhibited three clues but also put his foot down three times. Finally, Officer Patten testified that during appellant's recitation of the alphabet, appellant would become confused and could not explain why he was unable recite it even though he admitted he understood the alphabet. Officer Patten explained appellant would keep stopping at "M N O P" and would say "H I J J K L L M N M N O." Throughout the administration of these tests, Officer Patten noticed appellant slurred his speech, had watery eyes and a flushed appearance, appeared confused, and smelled of intoxicants. Officer Patten also testified that appellant admitted to drinking one beer before driving.

After the field sobriety tests, Officer Patten arrested appellant for driving while intoxicated and searched his vehicle. During the search of appellant's vehicle, Officer Patten found an open bottle of liquor and an open can of beer. Officer Patten testified the open can of beer was within appellant's reach while he was in the driver's seat. Officer Patten also found beer in the red cooler that was on the front passenger side floorboard.

The trial court denied appellant's motion to suppress both the results of the HGN test and the open containers. Appellant subsequently pled no contest. Appellant perfected this appeal.

Based on Officer Patten's testimony at the suppression hearing, the trial court entered the following findings of facts:

- Officer Patten detected the smell of intoxicants coming from inside the vehicle.

- Officer Patten noticed appellant had bloodshot eyes.

- A red cooler was in plain view on the front right floorboard.

- Appellant admitted to drinking one beer.

- Officer Patten had appellant perform the HGN test; appellant turned his head and could not focus on the stimulus.

- Officer Patten had appellant perform Walk and Turn test; appellant exhibited six out of eight clues.

- Officer Patten had appellant perform the One Leg Stand test; appellant exhibited three out of four clues.

- Officer Patten asked appellant to recite the alphabet; appellant was unable to do so correctly.

## ANALYSIS

A trial court's ruling on a motion to suppress is reviewed under a bifurcated standard. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). A reviewing court will first give "almost total deference to a trial court's determination of historical facts," and secondly, review the trial court's application of the law de novo. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (quoting *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997)). "[T]he trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George*, 237 S.W.3d at 725. If the trial court makes explicit findings of fact, it must be determined whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). A trial court's legal ruling is reviewed de novo unless its fact findings, which are supported by the record, are dispositive of the legal ruling. *Id.* A trial court's ruling on a motion to suppress will be upheld if there is any valid theory of law applicable to the case, even if the trial court did not base its decision on that theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

### *HGN Test*

In his first and second points of error, appellant argues the trial court erred in denying his motion to suppress because Officer Patten was not qualified to administer the HGN test and the test was improperly administered because the results were "medically impossible." Appellant

also argues that Officer Patten was not qualified, as an expert, to testify as to administration and technique of the HGN test.

Appellant contends Officer Patten was not qualified to administer the HGN or testify to its results because Officer Patten had not been re-certified, under the Texas Administrative Code, to perform field sobriety tests when appellant was stopped. *See* 37 TEX. ADMIN. CODE § 221.9 (2009) (Tex. Comm'n on Law Enforcement Officer Standards & Educ., Standardized Field Sobriety Testing Practitioner ("SFST")). The Texas Administrative Code specifies that for an officer to qualify for an SFST certificate, the officer must complete the SFST course offered by the National Highway Traffic Safety Administration's ("NHTSA") as well as an update course within the past twenty-four months. *Id.*

We will first address whether Officer Patten was qualified to administer the test and testify to its results. Under the Texas Rules of Evidence, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. It has been determined that because HGN testing is novel scientific evidence, the testifying witness must be qualified as an expert on the administration and technique of the test. *Emerson v. State*, 880 S.W.2d 759, 763, 769 (Tex. Crim. App. 1994). Although appellant is correct in stating that certification is proof an officer is qualified to administer the HGN test and to testify, *see id.* at 769, a certificate is not the only means by which an officer may be qualified. *Ellis v. State*, 86 S.W.3d 759, 761 (Tex. App.—Waco 2002, pet. ref'd). "If it is shown that the officer has extensive training in administering the HGN test, has been certified through a training course specifically including the administration of the HGN test, and has extensive experience in

administering the HGN test, the trial court does not abuse its discretion in allowing the officer to testify as an expert on the administration and technique of the test." *Id.* at 761; *see also Kerr v. State*, 921 S.W.2d 498, 502 (Tex. App.—Fort Worth 1996, no pet.) ("[W]e do not interpret . . . *Emerson* to require that an expert must be certified by the State of Texas before his testimony on the subject of an HGN test will be admissible.").

At the suppression hearing, Officer Patten testified he had been at the University of Texas at San Antonio Police Department for four years before he joined the Selma Police Department in 1999. Officer Patten then joined the San Antonio Police Department in 2002. That same year, Officer Patten graduated from the SAPD Academy. Officer Patten obtained his SFST certificate originally in 1999, and he also took a refresher course in 2003 as well as 2009, subsequent to the stop in question. Officer Patten received the standardized training for the proper administration of the HGN. Officer Patten also testified that he had performed the HGN test "hundreds" of times.

We hold the trial court did not abuse its discretion by denying appellant's motion to suppress Officer Patten's testimony because Officer Patten was qualified to both administer the test and testify to its results.

As for appellant's argument that the HGN test should be suppressed because the results were "medically impossible," we must analyze the administration of the test. HGN testing is considered novel scientific evidence which is subject to the requirements of *Kelly*. *Emerson*, 880 S.W.2d at 763 (citing *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)). Under *Kelly*, scientific evidence is reliable if: (1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and (3) the technique was applied properly on the occasion in question. *Kelly*, 824 S.W.2d at 573. In *Emerson*, the court of criminal appeals took

judicial notice that HGN testing satisfies prong one and prong two of *Kelly*. *Emerson*, 880 S.W.2d at 768-69. In order to determine the third prong, a court must examine the record to determine if the HGN technique was properly applied on the occasion in question. *Id.* at 769. While administering the HGN test, the officer must follow the procedures outlined in the DWI detection manual published by the NHTSA. *Id.* at 768.

Officer Patten explained the NHSTA requires the subject to stand with their feet together and arms to their side. While standing, the subject must track the blue stimulus without moving their head. An officer must pass each eye twice while looking for lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and nystagmus onset prior to forty-five degrees. Each pass with the eye should be two seconds out and then two seconds in and when the stimulus is at forty-five degrees, the stimulus must be held for a minimum of four seconds. While reviewing the videotape of the stop, Officer Patten stated one of the passes looked "kind of short" and that it was maybe three seconds. Officer Patten then stated there are three clues for each eye for a total of six clues. Appellant exhibited three clues in the right eye and one clue in the left eye. Officer Patten reasoned that because appellant had difficulty following the stimulus, he did not mark that appellant exhibited the other two clues.

Many courts have held that slight variations in administration do not affect the reliability or admissibility of the HGN test, but only affect the weight to be given to the testimony. *See Plouff v. State*, 192 S.W.3d 213, 221 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("[I]t would be unreasonable to conclude that any variation in administering the tests, no matter how slight, could automatically undermine the admissibility of an individual's performance of the tests."); *Compton v. State*, 120 S.W.3d 375, 379 (Tex. App.—Texarkana 2003, pet. ref'd) ("Any variation in the time taken to appropriately position the eyes would have no effect on the

reliability of [the HGN] test and cannot form the basis for excluding the results from the evidence presented at trial."). Here, Officer Patten may have only held the stimulus for three seconds instead of four, but it was within the trial court's discretion to find that any deviation committed by Officer Patten during administration of the HGN test was slight and did not affect the reliability and admissibility of the results.

### *Open Container*

In his third point of error, appellant contends the trial court erred in denying his motion to suppress the open containers of alcohol found in his vehicle because they were the fruits of an unlawful, warrantless search of his vehicle. More specifically, appellant argues Officer Patten violated his Fourth Amendment rights.

Both the United States and the Texas Constitutions protect citizens from unreasonable search and seizures. *See* U.S. CONST. amend. IV; TEX. CONST. art. 1, § 9. The United States Supreme Court, in *Katz v. United States*, held that warrantless searches are *per se* unreasonable without a specifically established exception. 389 U.S. 347, 357 (1967); *see also Kelly v. State*, 669 S.W.2d 720, 725 (Tex. Crim. App. 1984), *cert. denied* 469 U.S. 963 (1984) (recognizing that "a search conducted without a warrant issued on probable cause is *per se* unreasonable and that the warrant requirement is subject only to a few well-delineated exceptions." (citing *Katz*, 389 U.S. at 357)). "[I]f police have probable cause coupled with an exigent circumstance, or they have obtained voluntary consent, or they conduct a search incident to a lawful arrest, the Fourth Amendment will tolerate a warrantless search." *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) (citing *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003)).

When a police officer makes a lawful custodial arrest of a recent automobile occupant, that officer may then search the passenger compartment as a search incident to arrest. *New York*

*v. Belton*, 453 U.S. 454, 460 (1981); *see also State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999) ("Once an officer has probable cause to arrest, he may search the passenger compartment of a vehicle as a search incident to that arrest."). But, before an officer is allowed to search the vehicle, the officer must have probable cause to make a warrantless arrest of the occupant. *Ballard*, 987 S.W.2d at 892.

The search of appellant's vehicle was valid because Officer Patten had probable cause to arrest appellant for driving while intoxicated. As discussed above, appellant not only failed numerous field sobriety tests, but his eyes were bloodshot and watery, he was slurring his words, and the smell of intoxicants emanated from his vehicle. This is sufficient evidence for probable cause to make a warrantless arrest for driving while intoxicated. Because Officer Patten had probable cause to arrest appellant, he was justified in searching appellant's car incident to appellant's arrest.

Appellant contends Officer Patten was not justified in searching appellant's car because he was secured in the back of Officer Patten's vehicle and was not within reaching distance of the car. Appellant cites to *Arizona v. Gant* and *Chimel v. California* for this proposition. *Arizona v. Gant*, 129 S. Ct. 1710 (2009); *Chimel v. California*, 395 U.S. 383 (1969). Although the Supreme Court held an officer may not search an arrestee's vehicle if the arrestee is secured and cannot reach the passenger compartment of the vehicle, appellant fails to consider the Court's exception. *See Gant*, 129 S. Ct. at 1714. The Court explained that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in

judgment)). "[T]he offense of the arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Id.*

It is undisputed that appellant was secured in the back of Officer Patten's police vehicle when Officer Patten conducted the search incident to arrest of appellant's car. Appellant was arrested for driving while intoxicated, and Officer Patten testified that the vehicle smelled like intoxicants and a red cooler was on the passenger side of appellant's car. It was reasonable for Officer Patten to believe evidence related to the offense for which appellant was arrested would be in the vehicle. *See Surredin v. State*, 165 S.W.3d 751, 753 (Tex. App.—San Antonio 2005, no pet.) ("Evidence of the open container would have been admissible . . . because it tended to make it more probable that Surredin was intoxicated at the time he drove since the open container was evidence that he consumed alcohol."). Therefore, the search of the passenger compartment of appellant's car was a valid search incident to arrest.

The trial court did not err when it denied appellant's motion to suppress the open containers. Accordingly, we overrule appellant's third point of error.

### CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

Marialyn Barnard, Justice

Do Not Publish